IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CRUZ BOLIVAR,**

      **Petitioner,**

**vs.**                                              **NO.  CIV. 04-1109 RB/DJS**

**UNIVERSITY OF NEW MEXICO, a state
statutorily created entity, and
COMMUNICATIONS WORKERS
OF AMERICA, LOCAL 7011, a union,**

      **Respondents.**

**MEMORANDUM OPINION AND ORDER**

**I. Introduction.**

      **THIS MATTER** comes before the Court on three motions--two by Defendants and one by Plaintiff.  Plaintiff's ("Mr. Bolivar") motion to strike Defendant University of New Mexico's ("UNM") affirmative defenses is moot for two reasons: i) UNM agreed to withdraw the defenses Mr. Bolivar seeks to strike; and ii) the Court now GRANTS both UNM's and Defendant Communications Workers of America's ("CWA") motions to dismiss under Federal Rules of Civil Procedure 12(b)(6). For the following reasons, therefore, the Court will GRANT both UNM's and CWA's Rule 12(b)(6) motions to dismiss.

**II. Background/facts.**

      Mr. Bolivar was a food service worker employed by UNM and represented by CWA under the terms of a collective bargaining agreement ("CBA").  (First Am. Pet. for Declaratory Relief ¶¶ 1, 3.)  UNM terminated Mr. Bolivar on December 14, 2001, following a pre-termination review. *Id.*

at ¶ 7.  UNM denied Mr. Bolivar's appeal on April 11, 2002, and Mr. Bolivar asserted his right to arbitration on May 9, 2002.  *Id.* at ¶¶ 11, 12.

Article 21, Section 11, of the CBA provides that:  "An appeal to arbitration may be made by the union, or an employee acting in his/her own behalf.  Should an employee acting in his/her own behalf appeal, he/she will be responsible for the costs of arbitration as provided for in section 4, above, and may be required by the Arbitrator to place a fee into escrow prior to proceeding to arbitration."  *See* CBA, Pet'r Ex. 1.  A union member pursuing arbitration against UNM, therefore, can choose from two options:  1) the employee can elect to have the CWA make the appeal to arbitration, at no cost, with a Union representative present to assist them; or 2) hire private counsel to represent them and split the costs of arbitration with UNM.  (First Am. Pet. for Declaratory Relief ¶¶ 15, 21, Pet'r Ex. 1, Art. 21, §§ 6, 11.)  A non-union employee may pursue arbitration without representation at no cost.  (First Am. Pet. for Declaratory Relief ¶¶ 31, 32.)  On August 16, 2004, Arbitrator Howard Finston refused to hear the dispute because Mr. Bolivar could not afford to pay any more fees associated with the arbitration.  *Id.* at ¶ 29.

Mr. Bolivar contends that the cost splitting provisions of the CBA (Article 21, Sections 6 and 11) violate: 1) his due process rights under the Fourteenth Amendment; 2) the Equal Protection Clause by discriminating against union members; 3) his First Amendment right to associate with counsel by requiring union members to pay for their arbitration hearings; and 4) New Mexico public policy.  (First Am. Pet. for Declaratory Relief ¶¶ 34, 35.)  Mr. Bolivar asks the Court to hold Article 21, Sections 6 and 11, of the CBA unenforceable, null, and void under 42 U.S.C. § 1983 and the New Mexico Declaratory Judgment Act, N.M. STAT. ANN. §§ 44-6-1 *et seq.*  (First Am. Pet. for Declaratory Relief ¶¶ 36, 37.)  Mr. Bolivar also requests attorney's fees for his federal claims against

UNM under 42 U.S.C. § 1988, costs awarded against UNM, and for any other relief the Court sees fit to grant him.  Both UNM and the CWA moved to dismiss the case for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

**III. Analysis.**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

### A. Standard of review.

A motion to dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pleaded factual allegations of the complaint as true and view them in the light most favorable to the non-moving party.  *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002).

### B. Mr. Bolivar's procedural due process claim.

The Fourteenth Amendment protects citizens from the deprivation of "life, liberty, or property, without due process of law . . . ."  U.S. CONST. amend. XIV, § 1.  The Tenth Circuit distinguishes between procedural due process, which "ensures that a state will not deprive a person of life, liberty, or property unless fair procedures are used in making that decision" and substantive due process, which "guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision."  *See Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) (internal quotations omitted).  Because Mr. Bolivar appears to argue that the CBA denied him procedural due process, stating, for instance, that "[t]he collective bargaining agreement provisions requiring him to pay for an arbitrator . . . deny

3

him . . . a post deprivation due process hearing . . .," the Court will analyze his claims under a procedural due process theory.

The Court engages in a two part inquiry to determine if a plaintiff was denied procedural due process: "1) Did the individual possess a protected interest to which due process protection was applicable? [and] 2) Was the individual afforded an appropriate level of process?" *Hennigh,* 155 F.3d at 1253 (internal citations omitted). In *Hennigh*, the Tenth Circuit held that the plaintiff had a legitimate property interest in his rank as a police officer "created by state law in the form of the CBA, contracted pursuant to state legislation . . . . The CBA gave Plaintiff a legitimate expectation of continued employment as a lieutenant unless the City found 'cause shown.'" *Id.* at 1255. Similarly, UNM and the CWA entered into a collective bargaining agreement under New Mexico law and UNM could only discharge Mr. Bolivar for cause under that agreement. (First Am. Pet. for Declaratory Relief ¶¶ 2, 3, 6.) In all likelihood, therefore, Mr. Bolivar had a property interest in his employment with UNM.

The second prong of the procedural due process analysis centers on whether Mr. Bolivar received an appropriate level of process with respect to his termination. Where an employee received adequate notice and an opportunity to be heard at a pre-termination hearing, less process is required at a post-termination hearing. *See, e.g., Benavidez v. City of Albuquerque*, 101 F.3d 620, 626-27 (10th Cir. 1996). And "a plaintiff is not entitled to an extensive or formal pre-termination hearing if there are adequate post-termination procedures." *Hennigh*, 155 F.3d at 1256. The Tenth Circuit, and several other circuits, have generally held that "grievance procedures provided by a collective bargaining agreement can satisfy a plaintiff's entitlement to post-deprivation due process." *Hennigh*, 155 F.3d at 1256.

In *Hennigh*, the Tenth Circuit held that an employee had received adequate process where he "availed himself" of the procedure available under the collective bargaining agreement even though the Union declined to bring a formal grievance against the City. *Id.* Moreover, where an employee "forewent any opportunity for a post-termination proceeding under the collective bargaining agreement," the employee was provided with adequate post-termination procedures. *See Montgomery v. City of Ardmore*, 365 F.3d 926, 938 (10th Cir. 2004).

Viewing the facts in the light most favorable to Mr. Bolivar, he was afforded pre and post termination hearings and the opportunity to appeal UNM's termination decision to arbitration. At that point, he had the option to pay nothing and proceed with a union representative or hire private counsel to represent him and split the costs of arbitration with UNM. Mr. Bolivar chose to forgo the cost-free union representation and proceed with his own attorney. If anything, the CBA provided Mr. Bolivar with *additional* process than the law requires. *See, e.g., Armstrong v. Meyers*, 964 F.2d 948, 951 (9th Cir. 1992) (holding that "[e]xclusive union control of the grievance process as the employees' sole representative" constitutes adequate process). Neither UNM or the CWA acted unlawfully in doing so.

Mr. Bolivar explains the due process issue in terms of "whether indigent employees *must pay* for their post job termination deprivation due process hearing vouchsafed by the Fourteenth Amendment . . . ." (Resp. to CWA's Mot. to Dismiss at 1.) (emphasis added). He later argues that "An employee loses his meaningful opportunity to be heard when he or she is forced to pay for the very due process which is constitutionally mandated." *Id.* at 7.[1] This is an improper characterization

---

[1] Perhaps most telling is Mr. Bolivar's admission that "Petitioner does not dispute that the procedures themselves satisfy due process." (Resp. to CWA's Mot. to Dismiss at 5.) What Petitioner instead disputes is that "requiring a person who is indigent to pay for his statutory right hearing is unlawful." *Id.* He cites to *Shankle* for this proposition but as is discussed in part E., this case does not involve a statutory claim (i.e Title VII). Instead, it involves a dispute under a collective bargaining agreement and *Shankle*, therefore, is inapplicable.

5

of the issue in this case. The CBA allowed Mr. Bolivar to appeal to arbitration at *no cost*, with a union representative, *or* proceed with private counsel and pay half the cost of arbitration--with UNM bearing the remaining cost. Neither UNM or the CWA forced Mr. Bolivar to pay for his appeal to arbitration. The Court finds, therefore, that the CBA between UNM and the CWA provided Mr. Bolivar with adequate procedural due process.

### C. Mr. Bolivar's equal protection claim.

The Supreme Court has held that: "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons *similarly situated* should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (emphasis added). All persons similarly situated to Mr. Bolivar are all union employees whose bargaining agent is the CWA. Although he argues that the CBA discriminates against union employees who choose to hire private counsel to represent them at arbitration instead of a union representative, Mr. Bolivar could choose from the same post-termination procedures as any other union employee. He could either allow a union representative to assist him at arbitration at no cost, or hire a private attorney and split the costs of arbitration with UNM. The CBA does not discriminate against union employees who seek to hire their own counsel, rather it confers a benefit on union employees who pursue their grievances through the union--the benefit of free representation. The CBA does not prevent union employees from hiring their own attorney, it simply requires them to split the cost of arbitration with UNM if they elect to be represented by private counsel.

In addition, Mr. Bolivar erroneously contends that he is being denied equal protection of the laws because non-union employees do not have to pay for arbitration. He is not a non-union

employee. Mr. Bolivar, like any other union employee, was treated differently than non-union employees because he received the benefits of a bargained for exchange between the CWA and UNM. It is undisputed that both union and non-union employees can have a post-termination arbitration hearing at no cost. As a union employee, however, Mr. Bolivar also had the benefit of free union representation at the arbitration had he chosen to pursue it. Non-union employees did not receive that benefit. Mr. Bolivar's equal protection claim, therefore, is without merit.

### D. Mr. Bolivar's First Amendment right to associate with counsel.

Mr. Bolivar contends that the CBA interfered with his right to have a private attorney represent him at arbitration by requiring him to pay half the cost of arbitration if he chose to hire private counsel. However, no such right exists. The Tenth Circuit has upheld collective bargaining agreements that grant unions exclusive control over post-termination grievance procedures. *Hennigh*, 155 F.3d at 1256. The CBA at issue in this case does not grant the CWA exclusive control over employee appeals to arbitration. Instead, it gives employees the option of hiring private counsel to represent them at arbitration. To date, for example, Mr. Bolivar has hired two attorneys to represent him. The CBA, therefore, does not infringe on Mr. Bolivar's right to associate with counsel and this claim will be dismissed.

### E. New Mexico public policy.

There is no factual basis for Mr. Bolivar's claim that the CBA violates New Mexico public policy. In fact, Mr. Bolivar concedes that "there is no New Mexico state decision directly on point" but argues that "New Mexico . . . has a strong public policy against unconscionable provisions contained in contracts." (Resp. to Mot. to Dismiss at 10-11.) While this is true, the argument that the CBA is unconscionable is without merit because it provides him with appropriate process. Mr.

7

Bolivar also contends that the CBA provisions requiring him to pay for an arbitrator violate the public policy of N.M. STAT. ANN. § 44-7A-22. (First Am. Pet. for Declaratory Relief ¶ 35.) That statute has been repealed and is no longer in effect. Lastly, Mr. Bolivar argues that the CBA violates the principles espoused by the Tenth Circuit in *Shankle v. B-G Maintenance Mgmt. of Colorado, Inc.*, 163 F.3d 1230 (10th Cir. 1999). That case is inapplicable because it dealt with an arbitration agreement the employee signed as a condition of continued employment, which required him to pay one-half of the arbitrator's fees to invoke arbitration of his Title VII, ADEA, and ADA claims. *Id.* at 1234. In *Shankle,* the Tenth Circuit analyzed an employee's statutory claims under an employment contract governed by the Federal Arbitration Act. *Id.* at 1235. It had nothing to do with grievance procedures pursuant to a collective bargaining agreement. Mr. Bolivar has not provided the Court with any legal sources that support his contention that the CBA violates New Mexico public policy.

New Mexico does, however, instruct public employers and employee representatives on how to bargain. N.M. STAT. ANN. § 10-7E-17A(2) provides that "public employers and exclusive representatives . . . shall enter into written collective bargaining agreements covering employment relations." It goes on to state that: "An agreement shall include a grievance procedure to be used for the settlement of disputes pertaining to employment terms and conditions . . . . The costs of an arbitration proceeding conducted pursuant to this subsection shall be shared equally by the parties." N.M. STAT. ANN. § 10-7E-17F. The next section states that: "The costs of an arbitrator and the arbitrator's related costs conducted pursuant to this subsection shall be shared equally by the parties. Each party shall be responsible for bearing the cost of presenting its case.." N.M. STAT. ANN. § 10-7E-18A(5).

The CBA adheres to this policy. UNM and the CWA established a grievance procedure that splits the cost of arbitration between them. A union employee who appeals to arbitration, therefore, pays nothing and gets the benefit of a union representative. A nonunion employee likewise pays nothing to appeal to arbitration, though he or she does not receive the benefit of free representation. The CBA also allows terminated union employees to pursue arbitration with the representative of their choice, albeit at their own expense. Though no party cited these statutes, they provide evidence of New Mexico public policy. The CBA did not violate this policy.

**IV. Conclusion.**

Viewing the facts in the light most favorable to Mr. Bolivar, he fails to state a claim upon which relief may be granted. The Court, therefore, GRANTS the CWA's and UNM's motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**